# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TNUZEG HOLDINGS, LLC, <br><br> Defendant. | Civil Action No. 17-1655 |

## MEMORANDUM OPINION

The Trustees of the Service Employees International Union National Industry Pension Fund (collectively, the Fund) seek delinquent pension fund contributions from Tnuzeg Holdings, LLC (doing business as New Vista Nursing and Rehabilitation Center, or New Vista). The Fund alleges that New Vista owes $194,390.51 in delinquent contributions, interest, and liquidated damages for the period between July 2013 and April 2017, plus additional pre- and post-judgment interest and attorneys' fees and costs. New Vista contends that the Fund's calculations are unreliable, but it fails to provide a factual or legal basis for its contention or to counter the Fund's demonstration of its calculations. Because the Fund satisfactorily identifies the underlying obligation and the monies owed, there is no genuine dispute on any material fact. The Court will grant summary judgment to the Fund.

## I. BACKGROUND

The Fund, an "employee benefit plan" and "a multiemployer plan" under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002, was established

1

and maintained to provide pension benefits to eligible employees of contributing employers. New Vista, part of a group of nursing homes, is one such contributing employer. In the present action, the Fund and its trustees allege that New Vista owes unpaid contributions, interest, and liquidated damages as required under the controlling trust agreements and collective bargaining agreements, in violation of ERISA and the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a).

Specifically, the Fund seeks unpaid contributions from New Vista for the period between July 2013 and April 2017. *See* Ex. 11, Pls.' Mot. for Summ. J. (Mot.) [Dkt. 14], Decl. of Kisha Smith (Smith Decl.) [Dkt. 14-11] ¶ 27. Deriving eligible work hours by covered employees from monthly remittance reports submitted by New Vista, the Fund calculates that New Vista underpaid $133,925.29 in total contributions for the period of July 2013 through April 2017, and that New Vista owes additional interest for late payments and underpayments as well as liquidated damages for underpaid or late contributions. In total, the Fund alleges that New Vista owes $194,390.51 for the period July 2013 through April 2017, plus additional interest since that month, and attorneys' fees and costs for this litigation. *Id.* ¶¶ 27-31.

New Vista has been signatory to a series of contracts that require it to contribute to the Fund. *See id.* ¶¶ 6-17. New Vista signed a memorandum of agreement (2008 MOA) with the Union dated July 17, 2008 by which it agreed to a master collective bargaining agreement known as the "Tuchman Agreement." *Id.* ¶ 6; *see also* Ex. 1, Mot., Tuchman Agreement [Dkt. 14-1]. At least by then, SEIU Local 1199 United Health Care Workers East was recognized by New Vista as the exclusive bargaining representative for all employees it employed excluding office clerical employees, supervisors, watchmen, and guards. *See* Compl. [Dkt. 1] ¶ 9. The Tuchman Agreement was in effect from March 13, 2008 (before New Vista became a signatory

through the 2017 MOA) to February 28, 2013. *Id.* ¶ 10. As part of a group of nursing homes, New Vista underwent interest arbitration with the Union in 2012 to decide the terms for a new collective bargaining agreement. *See id.* ¶ 11; *see also* Smith Decl. ¶ 7; Ex. 3, Mot., Arbitration Decision [Dkt. 14-3]. The arbitrator's award extended the term of the Tuchman Agreement from March 1, 2012 through June 30, 2016 with amendments. *See* Arbitration Decision at 14-15. On March 20, 2017, New Vista signed a memorandum of agreement with the Union, which renewed the Tuchman Agreement through December 31, 2020. *See* Smith Decl. ¶ 8; *see also* Ex. 4, Mot., 2017 MOA [Dkt. 14-4].

The Tuchman Agreement has required New Vista to contribute periodically to the Fund on behalf of all covered employees and to comply with the Fund's collections policy (the Collection Policy) which imposes interest on any late or unpaid contributions (delinquent contributions), additional liquidated damages for delinquent contributions if a lawsuit must be filed to collect the delinquencies, and attorneys' fees and court costs incurred in collecting amounts owed. *See* Tuchman Agreement. As relevant here, the base contribution rate was 2.75% of gross monthly earnings for all bargaining unit employees. *See id.* ¶ 30.3. New Vista also was bound to an agreement establishing the Fund (the Trust Agreement), and to the Fund's Collection Policy for delinquent contributions. *See id*. ¶ 30.4; *see also* Ex. 5, Mot., Trust Agreement [Dkt.14-5]; Ex. 6, Mot., Collection Policy [Dkt. 14-6]. The Tuchman Agreement specifically states:

> The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, *including collection policies*, receipt of which is hereby acknowledged.

3

Tuchman Agreement ¶ 30.4 (emphasis added).

The Collection Policy provides that a delinquent employer is liable for interest at a rate of 10 percent (10%) per annum, plus liquidated damages at a rate of 20 percent (20%) after the commencement of legal action, plus attorneys' fees and costs. *See* Collection Policy § 5.

Further, New Vista's obligations to the SEIU Pension Fund are governed by the Pension Protection Act of 2006 (PPA), 29 U.S.C. § 1085. That statute requires a pension fund facing certain funding deficiencies to issue notices of "critical status" to contributing employers and to institute a "rehabilitation plan" that may adjust benefits and/or contributions or assess surcharges to mitigate a fund's financial instability. 29 U.S.C. § 1085(a)(2), (e)(1), (e)(7). Beginning January 1, 2009, and in January of every year thereafter through 2017, the Fund was, pursuant to these statutory requirements, determined to have such funding deficiencies and to be in "critical status." *See* Ex. 7, Mot., Notices of Critical Status [Dkt. 14-7]. The Fund duly issued the required notices of critical status each April in 2009 through 2017. *See id.* at 3; *see also* Smith Decl. ¶ 18. Also as required under the PPA, the Fund adopted a rehabilitation plan on November 25, 2009, under which New Vista was required to pay a surcharge on delinquent contributions; initially the rate for this surcharge was 5% and it rose to 10% effective January 1, 2010. *See* Ex. 8, Mot., Rehabilitation Plan Notice [Dkt. 14-8] at 2.

The renewed Tuchman Agreement obligated New Vista to remit supplemental contributions as well (the Preferred Schedule). *See* Arbitration Decision at 19. Pursuant to the Preferred Schedule, New Vista was obligated to remit supplemental contributions at a rate of 37.6% of base contributions due beginning on July 1, 2013, 48.3% beginning July 1, 2014, and 59.8% beginning July 1, 2015. *Id.* at 25; *see also* Smith Decl. ¶ 22. The 2017 MOA continued this obligation and New Vista became required to remit supplemental contributions at a rate of

72.1% beginning July 1, 2016 and 85.5% beginning July 1, 2017. *See* 2017 MOA ¶ 4. Failure to pay such additional contributions under a rehabilitation plan is treated as a delinquency by ERISA. 29 U.S.C. § 1085(e)(3)(C)(iv). None of these obligations is denied by New Vista.

The Fund alleges that New Vista failed to remit required contributions, supplemental contributions, interest, and liquidated damages for the period of July 2013 through April 2017. Mot. at 2. It calculates that New Vista owes a total of $194,390.51 for this period, plus still-accruing interest and attorneys' fees and costs. *Id.*

The Smith Declaration details how the Fund determined these liabilities and includes a spreadsheet (Exhibit A) specifying the monthly amounts owed by New Vista from July 2013 through April 2017. The Fund calculates amounts due based on the total gross monthly earnings of all covered employees as reported by the employer in monthly "remittance reports"; this amount is then multiplied by the 2.75% rate set forth in the Tuchman Agreement to determine the base contribution amount due per month. *See* Smith Decl. ¶ 26; *see also id.* at Exhibit A (noting in spreadsheet column a the "CBA Rate" of 0.0275 by which "Base CBA Contributions Due" are calculated). The spreadsheet also shows the "Total Contributions Due," and "Amount Received," which include base contributions as well as supplemental contributions (*i.e.*, surcharges as set forth in the Rehabilitation Plan); another column for "Contribution Underpayment" shows the difference between the amount due and the amount received. *See id.* at Exhibit A. Based on these calculations, the Fund determined that New Vista had underpaid $133,925.29 in total contributions for the period of July 2013 through April 2017. *Id.* ¶ 27.

The spreadsheet includes columns for interest and liquidated damages owed on past due contributions, pursuant to the Fund's Collection Policy, which required New Vista to pay interest on delinquent contributions "through and including the date payment is actually

5

received by the Fund Office at the rate of ten percent per annum." *Id.* at Exhibit A; *see also* Collection Policy § 5. The total for interest owed for July 2013 through April 2017 is calculated to be $26,406.83; liquidated damages totaled $34,058.39 for the same period. Smith Decl. at Exhibit A. These details support the Fund's calculation of New Vista's total liability in the amount of $194,390.51 (the total of $133,925.29 plus $26,406.83 plus $34,058.39), plus interest, which "continues to accrue on these unpaid amounts until the date payment is received." Smith Decl. ¶¶ 27-31. The Fund also seeks attorneys' fees and costs.

The Fund filed this lawsuit on August 15, 2017. It alleges that New Vista violated Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), by failing to make required contributions to the SEIU Pension Fund. Compl. The Fund moved for summary judgment on December 22, 2017. *See* Mot. New Vista opposed. Mem. in Opp'n to Mot. for Summ. J. (Opp'n) [Dkt. 16]. The Fund replied. Reply to Opp'n to Mot. for Summ. J. (Reply) [Dkt. 17]. The motion is now ripe for review.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient admissible evidence such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment bears the initial responsibility of identifying portions of the record which demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (providing that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"). In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue for trial. *See Celotex*, 477 U.S. at 324. On a motion for summary judgment, the court must analyze all facts and inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, to the extent the non-moving party relies on conclusory assertions offered without any evidentiary support, such assertions do not establish a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

**B. ERISA**

ERISA "makes a federal obligation of an employer's contractual commitment to contribute to a multi-employer pension fund." *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004). Specifically, ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. If an employer violates this section, relief awarded to the plan includes "unpaid contributions . . . interest on the unpaid contributions . . . liquidated damages . . . reasonable attorney's fees and costs . . . and . . . other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). As amended by the PPA, ERISA also imposes

supplemental contributions that are "reasonably necessary to emerge from critical status," 29 U.S.C. § 1085(e)(1), when a multiemployer benefit plan is deemed to be acutely underfunded. In such cases, the fund must "adopt and implement a rehabilitation plan," 29 U.S.C. § 1085(a)(2), and a contributing employer's failure to pay a rehabilitation plan's supplemental contributions "shall be treated as a delinquent contribution under section 1145 of this title [ERISA] and shall be enforceable as such." 29 U.S.C. § 1085(e)(3)(C)(iv).

### III. ANALYSIS

The Fund seeks unpaid contributions, supplemental charges, interest, and liquidated damages for the period July 2013 through April 2017, as well as still-accruing interest and attorneys' fees and costs. As enumerated in the Smith Declaration, the difference between the amount paid and the contributions due show that New Vista is delinquent in the amount of $133,925; owes interest on the delinquency in the amount of $26,406.83; and owes liquidated damages in the amount of $34,058.39. In total, the Fund seeks $194,390.51 for the period July 2013 through April 2017, plus additional interest that has continued to accrue, as well as attorneys' fees and costs.

New Vista does not dispute its liability but argues that genuine issues of material fact undermine the Fund's calculations.[1] More specifically, New Vista objects that: (1) the

---

[1] Jurisdiction is not challenged, and the Court finds that it has jurisdiction in this case. Under Sections 502(e) and (f) of ERISA, federal courts have jurisdiction to review ERISA claims. 29 U.S.C. § 1132 (e), (f); *see also* 29 U.S.C. § 185(c); 28 U.S.C. § 1331 (establishing federal question jurisdiction). Section 301(a) of the LMRA gives district courts of the United States jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 § U.S.C. 185(a). Venue is proper because the Fund is administered in the District of Columbia. *See* 29 U.S.C. § 1132(e)(2).
8

spreadsheet provided by the Fund is inadequate, and more extensive underlying data is necessary to support the calculation of monies owed; and (2) the Fund has failed to provide sufficient information to determine who is in the bargaining unit and how the Pension Fund applies the eligibility criteria because the Fund fails to establish that the base contribution amounts are derived from hours worked by employees who are contractually eligible to have contributions made on their behalf, *i.e.*, have worked more than 90 days.

These objections are without merit. Contrary to New Vista's protestations, the spreadsheet appended to the Smith Declaration is sufficiently detailed to leave open no genuine issue of material fact as to the amounts owed. As Ms. Smith explains in her declaration, the base monthly contribution amounts were calculated by multiplying "total gross monthly earnings of all covered employees as reported by [New Vista]" in its monthly remittance reports by the "contractually agreed upon rate between the employer and the union"—that is, 2.75% as required under the Tuchman Agreement. Smith Decl. ¶ 26; *see also* Tuchman Agreement ¶ 30.3. As the spreadsheet makes clear, New Vista did indeed send contributions to the SEIU Pension Fund in almost every month but occasionally late and not in the full amounts due. The delinquency now to be collected started at $21.57 for work performed in July 2013 and swelled up to as much as $8,618.80 for work performed in December 2016.

Ms. Smith specifically calculated "supplemental contributions" owed under the Rehabilitation Plan due to the Fund's critical status. Smith Decl. ¶ 26; *see also* Arbitration Decision at 20; Rehabilitation Plan Notice at 14 (stating the applicable supplemental rates). Accordingly, interest of 10% per year was assessed on the total unpaid or late paid contributions each month, *see* Smith Decl. ¶¶ 28-29; Collection Policy § 5; and liquidated damages were assessed on these amounts each month at rates set forth in the Collection Policy. Smith Decl.

9

¶ 30.  Read in conjunction with the appended spreadsheet, the Smith Declaration clearly explains how the Fund calculated the delinquent sum of $194,390.51, and that the Fund seeks additional accruing interest under the same controlling agreements, as well as reasonable attorneys' fees and costs.

New Vista's contention that the Court must review the raw data before it can order payment is flat wrong.  New Vista makes no arguments that effectively challenge the raw data used by the Fund in making these calculations.  Nor could it, since the Fund based its calculations on the monthly hours reports New Vista itself submitted.  Without a legitimate challenge, the spreadsheet is admissible and competent evidence:  under the Federal Rules of Evidence a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  For such a document to be admissible,

> the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; the documents themselves must be admissible; the documents must be made reasonably available for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it.

*United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (citing *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008)).  New Vista fails to dispute any of these factors and the Court finds that they are satisfied.  Should New Vista have had a fact-based challenge, its own remittance reports were available to it and it could have done the math itself.

New Vista further argues that the Fund has failed to provide "underlying documentation" that would permit "a determination about who comprises the bargaining unit and how the Pension Fund is applying the eligibility criteria."  Opp'n at 7.  "Most notably," New

Vista contends, "the relevant collective bargaining documents provided by [the Fund] nowhere define what employees comprise the bargaining group." *Id.*; *see also* Ex. 3, Opp'n, Decl. of David Jasinski (Jasinski Decl.) [Dkt. 16-3] ¶¶ 4-6, 10 (attorney declaration arguing that the Fund cannot support its allegations because it fails to provide "exact identities of covered employees" and "comprehensive raw data, to support its claims for amounts owed"). This argument is a red herring. The Tuchman Agreement identifies the bargaining unit (all employees excluding office clerical employees, supervisors, watchmen, and guards) and the named identities of these employees may be best known to New Vista. Again, it was New Vista's own remittance reports of hours worked *by eligible employees* that were the basis for the calculations. If there were any issue with the reliability or accuracy of these numbers, New Vista has all the relevant information. New Vista does not make a credible challenge or raise any genuine dispute as to the accuracy of the Fund's spreadsheet.

New Vista wants discovery and repeats its assertion that it is entitled to discover information from the Fund before summary judgment. New Vista initially made this argument before the Court set a briefing schedule. *See* Meet and Confer Statement [Dkt. 10]; Suppl. Meet and Confer Statement [Dkt. 13]. New Vista's primary contention was that it was entitled to discover facts "related to the basis for the damages amounts" claimed by the Fund. Suppl. Meet and Confer Statement at 2. Given the nature of this ERISA case, in which New Vista does not dispute that it is a signatory to the collective bargaining agreement and is required by the relevant documents to contribute to the Fund, and that the delinquencies are based on New Vista's own reports of hours worked by covered employees, the Court concluded that summary judgment briefing with appropriate declarations and exhibits would provide the evidence needed for New Vista to file an opposition. *See* 11/27/2017 Minute Order (setting briefing schedule).

New Vista maintains its objection but offers no sound reason for it except delay. The Fund has introduced into the record all evidence necessary for the Court to determine that there exists no genuine issue of material fact, and New Vista fails to articulate why the facts it hopes to discover are needed. *See, e.g.*, *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC*, 312 F.R.D. 678, 678-79 (D.D.C. 2015) (stating that a party cannot insist on additional discovery unless it can "articulate what facts it hopes to discover and why those facts are needed"). New Vista has or had in its own possession the underlying remittance reports that it now claims should be made available in discovery. The Court finds that this argument is without merit.

New Vista heavily relies on *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Hamilton Park Health Care Ctr., Ltd.*, No. 14-84, 2016 WL 183505 (D.D.C. Jan. 14, 2016), which found that a similar employer's argument "left the Court sufficiently skeptical of the Fund's numbers that it [wa]s unwilling . . . to enter judgment in the amount the Fund request[ed]." *Id.* at *2. Most cases are to the contrary. *See, e.g.*, *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Roseen Realty Corp.*, 308 F. Supp. 3d 132, 138-39 (D.D.C. 2018) (collecting cases and noting that "evidence-free" arguments against benefit fund calculations are insufficient to raise a question of fact).

*Hamilton Park* suggests that a court must make an "independent determination of the sum to be awarded" before it can enter summary judgment. This Court agrees with the statement in part. The evidence before a court must be sufficient to show claimed delinquencies by a preponderance of the evidence, but a court is not a bookkeeper required to repeat calculations. *See Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Harborview Healthcare Center Inc.*, 191 F. Supp. 3d 13, 18 n.14 (D.D.C. 2016) ("The 'independent

determination' requirement . . . arises in the context of a default judgment, where, unlike a motion for summary judgement, there is no opposing party."). *Hamilton Park* was also concerned with ambiguities that are not present here, such as unexplained changes in calculations. *See, e.g.*, *Hamilton Park* 2016 WL 183505, *3. By contrast, the Smith Declaration and accompanying spreadsheet are clear as to how the Fund calculated the delinquencies here. The Court is unpersuaded by New Vista's protestations, without evidence or any probing argument, that the spreadsheet is inaccurate, unsupported, or otherwise insufficient evidence.[2]

The Fund also argues that it is entitled to summary judgment on its separate claim of breach of contract under Section 301 of the LMRA, which allows suits "between an employer and a labor organization representing employees in an industry affecting commerce" to be "brought in any district court of the United States." 29 U.S.C. § 185. Because the SEIU Pension Fund identifies no additional remedy that would be available under the collective bargaining agreement, beyond that ordered under ERISA, the Court declines to rule on this allegation. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Roger Burns Painting LLC*, 783 F. Supp. 2d 144, 146-47 (D.D.C. 2011) (finding that an award of damages under LMRA was appropriate where the calculations varied from those determined under ERISA).

The motion for summary judgment will be granted.

---

[2] New Vista also argues that the Fund failed to send timely notices to New Vista for months in which the Fund alleges delinquencies. *See* Opp'n at 3; Jasinski Decl. ¶ 8; *see also* Collection Policy § 2.3 (providing that delinquency notices will be sent). However, New Vista makes no claim that the Fund's failure to send delinquency notices, even if contractually required, excuses its liability for delinquent contributions.

## IV.  CONCLUSION

The Court will grant the Fund's motion for summary judgment and enter judgment for the Fund in the amount of $194,390.51 plus interest to the date payment is received by the Fund, as well as reasonable attorneys' fees and costs.  A memorializing Order accompanies this Opinion.


Date: August 17, 2018

ROSEMARY M. COLLYER
United States District Judge